GLENMORE SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 40255, 46666, 50559. Promulgated November 10, 1931.

698

· *Lawrence A. Baker, Esq.*, and *Henry Ravenel, Esq.*, for the petitioner.

·*John D. Foley, Esq.*, and *James Maddox, Esq.*, for the respondent.

OPINION.

MARQUETTE: The plan and terms upon which the Carbarn Syndicate was organized are essentially the same as the plan and terms of Brighton Syndicate No. 1, and the Brighton Beach Hotel Syndicate. Respecting the latter two, we held in *Frank G. Wild*, 24 B. T. A. 691, that net profits of the syndicate constituted taxable income to the members for the years when earned, even though such profits were not then distributed by the managing member of the syndicates. The basis of that decision applies in this proceeding as to profits earned but not distributed by the Carbarn Syndicate in 1926 and 1927. See also *Ferry Market, Inc.*, 5 B. T. A. 167; *Walter S. Dickey*, 14 B. T. A. 1295. On that point, therefore, we sustain the respondent's determination.

The petitioner's second point is, that of the amount received by it from the syndicate in 1925, $40,395.83 was a return of capital and not taxable. The respondent has determined that the entire amount was distributed from profits and constituted taxable income.

The petitioner's contention is based upon a theory that under the syndicate agreement no member can derive taxable income until he has first received back the capital he invested.

The agreement itself does not expressly require a return of capital before any distribution of profits, except at the termination of the syndicate. The distribution in question was made before the syndicate terminated.

To support its theory as to the legal effect of the syndicate agreement, petitioner relies strongly upon the case of *Burnet* v. *Logan*, 283 U. S. 404. In that case the court was dealing with the question of gain or loss from the sale or other disposition of property, with respect to its March 1, 1913, value. The property in question consisted of shares in a mining company. The shares were sold for a consideration which, in part, consisted of a promise of future payments wholly contingent upon uncertain facts and circumstances. The court held that such promise was not the equivalent of cash, and had no ascertainable fair market value; that the transaction was not a closed one, and the taxpayer might never recoup her capital investment from payments only conditionally promised; and therefore " she properly demanded the return of her capital investment before assessment of any taxable profit based on conjecture."

The distinction between the case cited and the present proceeding is quite apparent. We are not here considering any question of gain or loss from the sale of property, but only whether a distribution from a fund consisting of invested capital and a somewhat larger amount of net profits shall be deemed a division of the profits or a return of capital. The two questions are not in the same category. To follow the *Logan* decision, *supra*, in the present proceeding would require us to ignore the widely different circumstances of the two cases, and to hold in effect that there can be no profit derived from any business enterprise, however long continued and however great its earned surplus, until all the invested capital has been returned to the investors. We do not consider that the *Logan* decision justifies such a proposition, nor do we consider that decision applicable to the facts before us.

It is not disputed that the net income of the syndicate for the year 1925 amounted to $817,293.56. The business enterprise carried on by the syndicate was not terminated in 1925, but continued thereafter for several years and earned a substantial net income in 1926, and also in 1927. The syndicate, although not a corporation, earned income by the use of capital. The respondent has determined that the amount distributed to members in 1925 was not a return of capital. The only evidence offered to disprove the correctness of that determination was that in making the distribution the major portion of

702

the amount was denominated as capital by the syndicate manager. Standing alone, as it does, that evidence is not sufficient to overcome the respondent's determination.

Although it appears that in 1925 there was distributed to members $27,722.67 more than the net earnings of the syndicate for that year, we are unable to say whether the amount in excess of earnings was taken from capital, or whether it represented net earnings prior to 1925. The record is silent on that point.

Reviewed by the Board.

*Judgment will be entered for the respondent.*